IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MARTHA WILLIS, Individually, and
as Mother and Next Friend of
JALESSA WILLIS, a Minor,                                          PLAINTIFF,

VS.                                          CIVIL ACTION NO. 2:07CV062-P-A

KIA MOTORS CORPORATION and
KIA MOTORS AMERICA, INC.,                                         DEFENDANTS.

**ORDER**

This matter comes before the court upon the defendant's motion *in limine* to exclude the testimony and opinions of the plaintiff's expert Joseph Burton, M.D. [210]. After due consideration of the motion and the responses filed thereto, the court finds as follows, to-wit:

In this case the plaintiff seeks compensatory and punitive damages, arguing that the seat belt and door latch of the subject 2001 Kia Sportage were negligently and defectively designed because Jalessa Willis was ejected from the vehicle in a roll-over despite the fact she was wearing her seatbelt. In other words, the plaintiff argues that the seat belt and the door latch were defective because had the seatbelt worked correctly and/or if the door had not come open during the roll, Jalessa would not have been ejected from the vehicle, causing her to be paralyzed from the navel down.

In the instant motion, the defendant argue that the testimony and opinions of the plaintiff's medical expert, Joseph Burton, M.D., should be excluded for failure to meet the standards of Fed. R. Evid. 702. In summary, the defendants argue that Dr. Burton's opinion that Julissa suffered her spinal injury after being ejected from the vehicle and landing with strong force on her buttocks, thereby compacting her vertebrae, is unreliable and should be excluded because it contradicts two

1

eyewitness statements that she landed on her back after ejection and because the opinion did not take into account that the seat tracks under the driver's seat were deformed, supporting the defense's theory that she suffered her spinal injury while still inside the vehicle. The defendants also take issue with Dr. Burton's "new opinion" that even if she received her spinal injury while still in the driver's seat inside the vehicle, this was caused by the seat belt having extended by approximately 8 inches (the "Energy Absorption loop" or "EA loop" mechanism) thereby causing her to be lifted up five to seven inches causing the force upon which her buttocks landed in the driver's seat to be increased enough to have caused the spinal injury. The defendants argue this alternative opinion is unreliable because (1) Dr. Burton does not know when the EA Loop deployed; (2) he did not point to any physical evidence that Julissa struck any portions of the interior of the vehicle consistent with such a jostle, such as marks on the ceiling, steering wheel, or the inside of the driver's side door; (3) he does not quantify the amount of force actually applied to Julissa's spine nor does he quantify how high Julissa rose above the seat before she landed; and (4) he is not qualified to give testimony regarding the performance of seat belt mechanics or occupant kinematics.

>Fed. R. Evid. 702 provides:
>
>If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The current text of Rule 702, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals., Inc..*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). "In Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified

that this gatekeeper function applies to all expert testimony, not just testimony based in science."

Advisory Committee's Note on 2000 Amendment of Fed. R. Evid. 702.

For the court to be the arbiter of the validity of a given scientific theory is indeed a heavy burden. As Judge Kozinski observed:

> Our responsibility then, unless we badly misread the Supreme Court's opinion [in *Daubert*], is to resolve disputes among respected, well-credentialed scientists about matters squarely within their expertise, in areas where there is no scientific consensus as to what is and what is not 'good science,' and occasionally to reject such expert testimony because it was not 'derived by the scientific method.' Mindful of our position in the hierarchy of the federal judiciary, we take a deep breath and proceed with this heady task.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

Ultimately, the district court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert.*, 509 U.S. at 589. Under the familiar *Daubert*/*Kumho* standards and their progeny, it is not the court's duty to determine in a motion in limine to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury. Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science or mere paid-for opinions.

There are many factors to consider in whether to open the gate to an expert. These factors begin with Fed. R. Civ. P. 26(a)(2)'s provisions regarding expert reports. Next come the primary factors under Fed. R. Evid. 702. To aid in considering the essentials of Rule 702, the decision in *Daubert* set forth several factors the courts should consider in its gate-keeping function. The Advisory Committee's Note on the 2000 Amendment of Rule 702 sets forth additional factors.

"[A] trial judge *may* consider one or more of the more specific factors that *Daubert*

mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case.*"*Kumho*, 526 U.S. at 141 (1999) (emphasis in original). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152. The district court has wide discretion in determining the admissibility of expert testimony, and its decision will be disturbed only for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998).

Since the defendants do not argue that the plaintiff failed to comply with Fed. R. Civ. P. 26(a)(2)'s expert report requirements regarding Dr. Burton, the court will proceed to the Rule 702 factors.

First, the court must determine whether Dr. Burton is qualified by knowledge, skill, experience, training, or education to give his opinions during trial. The defendants argue that Dr. Burton is not qualified to render his alternate opinion that the plaintiff received her injury inside the vehicle, taking into account deformation of the seat tracks, when the seatbelt extended up to 8 inches after the EA loop deployed and allowed her body to ascend five to seven inches in the air before the vehicle landed upright during one of the rolls, thereby increasing the force exerted upon her spine when she finally landed on her buttocks in the seat. The defendants contend that Dr. Burton has no experience or specialized education regarding the performance of seatbelts or occupant kinematics. The plaintiff counters that Dr. Burton is eminently qualified as a medical doctor and a forensic medical examiner who has investigated over 50,000 cases during his career, approximately 3000 of

4

which involved motor vehicle accidents, and approximately 1000 of which specifically involved rollovers. She maintains without dispute that he has given lectures in occupant kinematics and has been accepted in virtually all States as an expert in occupant kinematics, biomechanics, and injury causation in over 1000 cases. The plaintiff also contends that Dr. Burton has reviewed numerous cases involving EA loops in rollover and frontal crashes and in at least eight of these cases, the deployment of the EA loop was the primary defect allegation. In their rebuttal, the defendants appear to have not disputed Dr. Burton's qualifications any further. Accordingly, the court concludes that Dr. Burton meets the qualification requirement of Rule 702.

The next issue under Rule 702 is whether the testimony is based on sufficient facts. The defendants primary argument in this regard is that Dr. Burton's "original" opinion – that the plaintiff received her spinal injury when she was ejected from the vehicle and landed on her buttocks rather than inside the vehicle – is based on insufficient facts because the (1) opinion did not take into account the seat track deformation and (2) the opinion ignores the testimony of two eye witnesses who say the plaintiff landed on her back, not her buttocks. The plaintiff counters that as to the seat tracks, Dr. Burton testified during his deposition that he considered the seat tracks and concluded that "would have to be crazy to tell somebody the seat tracks are deformed. They are just shifted outward, basically, and the shift, according to the inclinometer, if you're looking at it in the long axis of the vehicle, is 10 degrees, but that is assuming the vehicle is at zero degrees. If the vehicle is leaning, then the whole thing is leaning at 10 degrees." See Deposition of Dr. Burton at 133-136. He proceeding to give three hypothetical explanations regarding the seat tracks. The plaintiff argues that Dr. Burton simply disagrees with the defendant's expert regarding the implications of the seat tracks under the driver's seat which goes to weight, not credibility. The court agrees. As to the

defendant's argument that Dr. Burton's opinion is based on insufficient facts because he disregards the two eye witnesses who claim the plaintiff landed on her back, the court concludes that Dr. Burton's explanation is reasonably reliable that he considered their statements but concluded that they were subject to limitations of memory and point of view. Thus, the court concludes that Dr. Burton's opinions are based on sufficient facts.

The next questions under Rule 702 are whether the testimony is the product of reliable methods and whether the witness applied those methods to the facts reliably. The defendants argue that Dr. Burton changed his original opinion that the plaintiff received her spinal injury outside of the vehicle during his deposition and posited a "new" opinion that she sustained the injury inside the vehicle because the excessive slack in the seatbelt. They argue that the new opinion is unreliable because (1) Dr. Burton does not know exactly when the EA loop deployed, causing the slack in the belt; (2) there is no physical evidence that the plaintiff moved an excessive amount because there are no marks on the ceiling, the inside of the door, or the steering wheel; and (3) Dr. Burton is unable to quantify the exact amount the plaintiff moved off the seat or the exact amount of force she allegedly exerted upon the seat. Having considered Dr. Burton's report, his deposition, and the plaintiff's seventh supplemental response to the defendants' interrogatories and designation of experts, the court concludes that Dr. Burton's "new" opinion was not offered to replace his original opinion; rather, the new opinion was a hypothetical rebuttal to the defendants' expert. In other words, Dr. Burton posit that assuming *arguendo* that the defendants are correct that the plaintiff received her spinal injury inside the vehicle, it most likely would have been because of the excessive slack in the seatbelt. The court determines that the failure to be able to specify the exact moment of the EA loop deployment is inconsequential since it is undisputed that it did deploy. It is also

6

undisputed that the defense has not posited the exact moment of deployment.

In any event, after reviewing the parties' briefs as well as Dr. Burton's CV, report, deposition, and the supplemental expert designation, the court concludes that Dr. Burton's opinions survive Rule 702 analysis. This is not to say that the opinion is correct. That question is within the province of the jury. Rather, the opinions are sufficiently reliable to not be junk science or speculation. The report describes in abundant detail the facts upon which Dr. Burton based his opinions. It describes the method used to arrive at the opinions, *i.e.*, the scientific method, and describes the expert's statement regarding potential rate of error. Essentially, the expert shows his work in his report. The defendants are free to criticize this work on cross examination.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the defendant's motion *in limine* to exclude the testimony and opinions of the plaintiff's expert Joseph Burton, M.D. [210] is **DENIED**.

**SO ORDERED** this the 8th day of July, A.D., 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE