**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**MARTHA WILLIS, Individually, and**
**as Mother and Next Friend of**
**JALESSA WILLIS, a Minor,**                                        **PLAINTIFF,**

**VS.**                                        **CIVIL ACTION NO. 2:07CV062-P-A**

**KIA MOTORS CORPORATION and**
**KIA MOTORS AMERICA, INC.,**                                        **DEFENDANTS.**

**ORDER**

This matter comes before the court upon the defendant's motion *in limine* to exclude the testimony and opinions of the plaintiff's expert Craig Good, Ph.D. [212]. After due consideration of the motion and the responses filed thereto, the court finds as follows, to-wit:

In this case the plaintiff seeks compensatory and punitive damages, arguing that the seatbelt and door latch of the subject 2001 Kia Sportage were negligently and defectively designed because Jalessa Willis was ejected from the vehicle in a roll-over despite the fact she was wearing her seatbelt. In other words, the plaintiff argues that the seatbelt and the door latch were defective because had the seatbelt worked correctly and/or if the door had not come open during the roll, Jalessa would not have been ejected from the vehicle, causing her to be paralyzed from the navel down.

Plaintiffs expert Craig Good's primary opinions are that (1) the seatbelt system in the subject 2001 Kia Sportage was defective because the EA loop deployed to allow approximately 8 inches of slack in the lap belt which failed to prevent the plaintiff from being ejected from the vehicle during the rollover; and (2) there existed three feasible alternative designs that were available for the 2001 Sportage that would not have invalidated the utility of the product: (a) rollover activated

1

pretensioners; (b) an all-belts-to-seats (ABTS) system without an EA loop; and (c) shoulder belt load limiters.

The defendants move to exclude Good's testimony, arguing that he is not qualified to render his opinions and/or his opinions are unreliable. Having considered the parties' briefs, the court proceeds to exercise its gate-keeping function.

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Ultimately, the district court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 589 (1993). Under the familiar *Daubert/Kumho* standards and their progeny, it is not the court's duty to determine in a motion in limine to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury. Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science or mere paid-for opinions.

There are many factors to consider in whether to open the gate to an expert. These factors begin with Fed. R. Civ. P. 26(a)(2)'s provisions regarding expert reports. Next come the primary factors under Fed. R. Evid. 702. To aid in considering the essentials of Rule 702, the decision in *Daubert* set forth several factors the courts should consider in its gate-keeping function. The Advisory Committee's Note on the 2000 Amendment of Rule 702 sets forth additional factors.

"[A] trial judge *may* consider one or more of the more specific factors that *Daubert*

2

mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case*."*Kumho*, 526 U.S. at 141 (1999) (emphasis in original). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152.

The district court has wide discretion in determining the admissibility of expert testimony, and its decision will be disturbed only for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998).

Since the defendants do not assert that the plaintiff failed to comply with Fed. R. Civ. P. 26(a)(2)'s expert report requirements, the court will proceed to the defendants' Rule 702 arguments that Dr. Good is not qualified to render his opinions and/or his opinions are unreliable.

With regard to Rule 702's requirement that the expert witness be qualified by knowledge, skill, experience, training, or education, the defendants argue that Good is not qualified to render his opinions on the EA loop because he never designed an EA loop himself, nor has he himself designed an entire seatbelt system, his prior work experience did not specifically involve EA loops, and this is the first law suit in which he has focused on an EA loop. The defendants also maintain that Good is not qualified to opine on the three proposed alternative designs because he has never designed any of the suggested alternative designs, nor has he authored a paper on shoulder belt load limiters.

The court concludes that Dr. Good is qualified by knowledge, experience, and education to

render his opinions. In terms of education, Dr. Good has an MA and Ph.D. in mechanical engineering, a field that obviously includes the study of the mechanics and physics of seatbelt systems generally. It is undisputed that his master's thesis involved the study of the behavior and movement of mechanical systems in response to forces, which the plaintiff argues involve the same principles needed to evaluate the effect of the EA loop in this case and the proposed alternative designs. His doctoral thesis, "Biomechanics of Occupants Subject to Motorized Seatbelt Tensioning," clearly evinces specific post-graduate level education and experience involving seatbelts and their effects on occupants. It is also undisputed that Dr. Good has authored or co-authored several peer-reviewed technical papers involving automobile occupant protection. Dr. Good has also had specific work experience in designing and evaluating safety belt systems while working for Breed Technologies, a significant supplier of restraint systems for vehicles. Accordingly, the court concludes that Dr. Good is qualified to render opinions on the subject seatbelt and proposed alternative designs.

Alternatively, the defendants maintain that even if Good were determined qualified, his EA loop opinions are based on unreliable methods since (1) he does not know for certain when the EA loop deployed or whether it deployed gradually or all at once; (2) he does not know the exact force exerted upon the EA loop; and (3) he has not tested or reenacted the rollover to determine the effect of the EA loop deployment upon the plaintiff.

This argument goes to Rule 702's requirement that expert testimony be based on sufficient facts. Having considered the parties' briefs in this regard, the court concludes that the defendants' argument that Dr. Good's EA loop opinions are unreliable are without merit. First, the defendants have not demonstrated why the reliability of Dr. Good's EA loop opinion is contingent upon

knowing the exact moment the EA loop deployed, especially since it is undisputed that it deployed.

Second, the defendants have not demonstrated that anyone does or can know the exact force exerted

upon the EA loop in the subject incident. Further, it is undisputed that Kia's corporate representative

stated that the subject EA loop was designed to deploy between 440 lbs and 770 lbs of force.

Therefore, there had to have been at least 440 lbs of force exerted upon the loop. Third, the

defendants have not demonstrated that it is legally required that Dr. Good must have tested or

reenacted the rollover, or for that matter, that he could have accurately recreated the accident.

The defendants also argue that Dr. Good's opinions are unreliable because he did not conduct

his own drawings or testing of the alternative designs, citing *Watkins v. Telesmith, Inc.*, 121 F.3d

984 (5th Cir. 1997) for the proposition that an expert in a defective design case is required to perform

independent design, testing, or drawings of alternative designs to meet *Daubert* standards, not just

conceptual opinions.

The circumstances in this case are readily distinguishable from those in *Watkins v. Telsmith*.

In that case, the expert proposed an alternative design for a conveyor that had never been tested nor

employed. Furthermore, the expert in *Watkins* had a degree in civil engineering. In this case,

however, Dr. Good has a Ph.D. in mechanical engineering, which is entirely relevant to the issues

at hand and the proposed alternative designs have already been used by the defendants' competitors.

In any event, *Watkins* does not stand for the proposition that an alternative design must always be

tested and/or designed by the expert. 121 F.3d at 992 (the Court observed that its conclusion "is not

to say that alternative product designs must always be tested by a plaintiff's expert."). Thus, the

court concludes that *Watkins* does not require exclusion of Dr. Good's alternative design opinions

since Dr. Good has a Ph.D. in mechanical engineering, with specific emphasis on seatbelt systems,

and the proposed alternative designs have already been tested and employed by other car manufacturers.

Having considered the parties' arguments regarding the three proposed alternative designs, the court concludes that the plaintiff has met her burden in demonstrating that these opinions were reached from a sufficiently reliable application of sound methods to sufficient facts pursuant to Rule 702. As discussed above, it is not the duty of the court in exercising its gate-keeping function to determine whether the expert is correct but rather whether his opinions are reliable and not the result of opportunistic, junk science. The defendants' arguments to the contrary go to weight rather than admissibility and they are free to cross-examine Dr. Good during trial on the perceived inadequacies of his alternative designs opinion.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the defendant's motion *in limine* to exclude the testimony and opinions of the plaintiff's expert Craig Good, Ph.D. [212] is **DENIED**.

**SO ORDERED** this the 8th day of July, A.D., 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE