IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MARTHA WILLIS, Individually, and
as Mother and Next Friend of
JALESSA WILLIS, a Minor,                                          PLAINTIFF,

VS.                                          CIVIL ACTION NO. 2:07CV062-P-A

KIA MOTORS CORPORATION and
KIA MOTORS AMERICA, INC.,                                          DEFENDANTS.

## ORDER

This matter comes before the court upon the defendant's motion *in limine* to exclude the

testimony and opinions of the plaintiff's door-latch expert Andrew Gilberg [214]. After due

consideration of the motion and the responses filed thereto, the court finds as follows, to-wit:

In this case the plaintiff seeks compensatory and punitive damages, arguing that the seatbelt

and door latch of the subject 2001 Kia Sportage were negligently and defectively designed because

Jalessa Willis was ejected from the vehicle in a roll-over despite the fact she was wearing her

seatbelt. In other words, the plaintiff argues that the seatbelt and the door latch were defective

because had the seatbelt worked correctly and/or if the door had not come open during the roll,

Jalessa would not have been ejected from the vehicle, causing her to be paralyzed from the navel

down.

The plaintiff's door-latch expert, Andrew Gilberg, opines that the driver's door opened when

damage to the door sustained during the rollover caused the outside handle linkage to move toward

the latch. This primary opinion is not disputed. Nor do the defendants dispute the qualifications of

Mr. Gilberg. Rather, the defendants argue that Mr. Gilberg's proposed alternative designs should

be excluded because they are not the products of valid, reliable scientific methodology, they were

not incorporated in 2001 and before vehicles, they are merely conceptual, and/or he has made no effort to establish that the designs would not impair the utility, usefulness, practicality, or desirability of the subject vehicle pursuant to Miss. Code Ann. § 11-1-63(f)(ii).

After having considered the parties' briefs, the court proceeds to exercise its gate-keeping function.

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Ultimately, the district court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 589 (1993). Under the familiar *Daubert/Kumho* standards and their progeny, it is not the court's duty to determine in a motion in limine to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury. Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science or mere paid-for opinions.

There are many factors to consider in whether to open the gate to an expert. These factors begin with Fed. R. Civ. P. 26(a)(2)'s provisions regarding expert reports. Next come the primary factors under Fed. R. Evid. 702. To aid in considering the essentials of Rule 702, the decision in *Daubert* set forth several factors the courts should consider in its gate-keeping function. The Advisory Committee's Note on the 2000 Amendment of Rule 702 sets forth additional factors.

"[A] trial judge *may* consider one or more of the more specific factors that *Daubert*

mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case*."*Kumho*, 526 U.S. at 141 (1999) (emphasis in original). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152.

The district court has wide discretion in determining the admissibility of expert testimony, and its decision will be disturbed only for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998).

Since the defendants do not assert that the plaintiff failed to comply with Fed. R. Civ. P. 26(a)(2)'s expert report requirements, nor do they argue that Mr. Gilberg is not qualified to offer his opinions, the court will proceed to consider the defendants' arguments regarding the reliability of Gilberg's proposed alternative door-latch designs. This requires an analysis of Rule 702's requirements that expert testimony must be the result of a reliable application of reliable methods on sufficient facts.

Additional standards to consider in this analysis are the peculiarities of product liability law in Mississippi. With regard to a defective design claim under the Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63 *et seq.*, not only must a plaintiff prove that a product was defectively designed, she must also prove that there existed one or more feasible design alternatives that would not have impaired the usefulness or desirability of the product.

Mr. Gilberg proposed the following alternative designs: designs referenced in eight patents;

tension cable between outer handle and door latch; electronic latch; and an auto-locking feature. Each will be considered in turn.

First, the defendants maintain that Mr. Gilberg's references to door latches contained in eight patents should be excluded. The plaintiff concedes on page 16 of her brief that he "is not proposing that these patents be utilized as alternative designs for the subject vehicle." Accordingly, the defendant's motion to exclude this proposed alternative design should be granted.

Second, Mr. Gilberg proposes an alternative design which replaces the compression rod inside the door between the outer door handle and the door latch with a tension cable. He has produced two exemplar doors, both of which are from a 2001 Kia Sportage with one unmodified and the other modified with the tension cable.

The defendants first argue that according to their expert, Ed Paddock, only 0.32% of vehicles between 1967 and 2001 used a tension cable and not one of them were used in a sport utility vehicle (SUV). This, the defendants maintain, demonstrates that such a design is not feasible. The plaintiff counters that this is a confusion of the state of the industry with the state of the art. In other words, the plaintiff maintains that just because very few vehicles used this design does not mean it was an unknown or untested design. Rather, the plaintiff urges, the fact that a few vehicles used the design which has been thoroughly tested and in use since 1995 is enough to demonstrate it is a feasible design alternative. The court tends to agree that the low frequency of use of a design does not necessarily mean it is not feasible, especially since it is undisputed that it has been in fact tested and used by manufacturers.

The defendants next argue that Mr. Gilberg's did not identify a production vehicle on the road in 2001 that used a tension cable other than referencing an unspecific BMW vehicle. The

plaintiff counters that the tension cable was used in the front door of a BMW X5, which is also a SUV, between 2000 and 2006. Furthermore, the defendants argue that Mr. Gilberg's affidavit specifically identifying the BMW X5 was filed after the discovery deadline. However, the court notes that the defendants did not file a motion to strike that affidavit, nor do they dispute the veracity of the affidavit's substance.

In response to the defendants' argument that Mr. Gilberg has not provided design drawings for the tension cables, the plaintiff counters that detailed design drawings are not required under *Daubert* or the MPLA and, in any event, he would be unable to acquire the design drawings from another car manufacturer.

In response to the defendants' argument that Mr. Gilberg has not attempted to apply the tension cable to the subject vehicle, the plaintiff points out that he has in fact done so with one of the exemplar doors. The defendants then argue that the exemplar door using the tension cable is not production ready, has not been tested, and the defendants' expert Mr. Paddock had trouble operating the exemplar door. The plaintiff responds that the law does not require the plaintiff to manufacture a production ready vehicle and Mr. Paddock's experience with the exemplar doors goes to weight and not admissibility.

Third, Mr. Gilberg has proposed an electronic latch as a feasible alternative design. The defendants argue that during his deposition, Mr. Gilbert confirmed that e-latches were not used in vehicles until after 2001 and even then, only in high-end vehicles. Thus, the defendants maintain, this design was not feasible for the 2001 Kia Sportage. In response, the plaintiff avers that the e-latch was used in a production vehicle as early as 1994 and that Bosch offered an e-latch in May 1998 for use in passenger cars designed to meet Federal Motor Vehicle Safety Standard (FMVSS)

5

206. In rebuttal, the defendants argue that Gilberg did not identify a 2001 or earlier vehicle incorporating Bosch's e-latch, nor has he done anything to independently verify the safe, reliable operation of these e-latches. The defendants also argue that the plaintiff failed to advise the court that the 1994 vehicle Mr. Gilberg identified as having used an e-latch used the device on a sliding door for a minivan and not in a front door. Finally, the defendants urge that the plaintiff cited no evidence that the subject e-latch actually passed FMVSS 206.

Finally, Mr. Gilberg proposes use of an auto-locking mechanism which essentially automatically locks the doors in a vehicle while its in drive. The defendants argue that this proposal is merely conceptual because he has not provided design drawings and that his opinion does not take into account whether or not the plaintiff would have disabled the auto-locking feature had it been installed in the subject vehicle. In response, the plaintiff asserts that rather than being merely conceptual, Kia itself used such a design in its 2001 Optima. The defendants rebut this argument by stating that Kia determined that an auto-locking feature was desirable for the Korean market, but not the US market. The plaintiff also argues that the auto-locking feature has been in extensive use for over 30 years, is thoroughly tested, was in use of approximately half of vehicles manufactured in 2001, and the implementation of the auto-locking feature would be a zero-cost option since Kia need only reprogram the vehicles software.

The defendants cite *Watkins v. Telsmith*, 121 F.3d 984 (5th Cir. 1997) and *Guy v. Crown Equipment Corporation*, 394 F.3d 320 (5th Cir. 2004) for the proposition that an expert must present design drawings on his own and cannot base his opinions regarding proposed alternative designs on designs already used by other manufacturers. These cases, however, do not stand for this proposition and, in any event, present significantly different circumstances.

The *Watkins* case involved a conveyor that collapsed and killed an employee when the single wire rope holding it up snapped. The expert in *Watkins* proposed an alternative design of simply adding a second wire rope to buttress the holding strength of the existing wire rope. The Court concluded that exclusion of this expert was proper not only because he did not offer his own detailed design drawings nor did he conduct testing (and the court agreed with the other experts in the case who believed such drawings and testing were needed), but also because he had a bachelor's degree in civil engineering while the court determined that mechanical engineering was the more appropriate area of expertise.

Unlike the situation in *Watkins*, there is no dispute that Mr. Gilberg is qualified to render his opinions, and his proposed alternative designs have already been tested and utilized by other car manufacturers, whereas the expert in *Watkins* simply conceptualized an option without testing it, presenting drawings, or citing other examples used by other contemporaneous conveyor manufacturers.

In *Guy*, the plaintiff was injured when the forklift she was operating fell upon her, injuring her leg. The Fifth Circuit affirmed the district court's ruling that the plaintiff's expert, Lohman, failed to present a definitive theory, opinion, or MPLA feasible design alternative that could be tested to prove the defective design of the forklift. In his initial report, Lohman stated that he believed a restraint device would have prevented the harm but he did not state which design alternative he preferred. In his deposition, he confirmed his preference for an operator restraint device, like a seatbelt, but had neither designed nor tested any of his suggestions. In his supplemental report, he repeated his preference for a seatbelt-type restraint and attached print-outs from a website selling airline seatbelt expanders. In his second deposition, Lohman referenced the

restraining device and noted that another forklift manufacturer utilized a restraining device and that the defendant could have used a similar design. He also stated that his research on this alternative design consisted of reading a website the day before being deposed. According to the Fifth Circuit: "In his reports and depositions, Lohman consistently advocated a *restraining device* as a feasible design alternative; but he never presented a specific design. Although he eventually suggested Crown could adopt a restraining device similar to Toyota's, he never submitted a complete 'end product.'" *Guy*, 394 F.3d at 327 (emphasis in original). The Court then cited *Watkins*, stating that "the proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Id*. Importantly, the Fifth Circuit concluded that "[t]he district court did not base its decision on Lohman's inability to test the door design. Instead, its decision was based on Lohman's inability, so close to trial, to definitively offer a specific feasible design alternative." *Guy*, 394 F.3d at 327.

Unlike the situation in *Guy*, where an expert simply conceptualized a single design alternative in a piecemeal manner over a period of time to a point near the trial date, Mr. Gilberg has proposed three "end product" design alternatives in a timely manner that have been tested and used in other vehicles, and in the case of the tension cable, Gilberg has gone as far as utilizing his design in an exemplar door. Furthermore, the testing and safety requirements for forklift designs are hardly comparable to those for automobile manufacturers.

Having considered the parties' arguments regarding the admissibility of Mr. Gilberg's proposed alternative designs, the court concludes that the defendants' motion should be granted regarding Mr. Gilberg's proposed alternative designs referenced in the eight patents, as conceded by the plaintiff. The motion should also be granted regarding the e-latch design since Mr. Gilberg

has not identified a vehicle that actually used one of the 1998 Bosch e-latches, nor has he adequately explained the feasibility of using the e-latches featured in the 1994 minivan sliding side doors in conventional SUV front doors.

The defendants' motion regarding the tension cable and auto-locking feature should be denied since the defendants' arguments regarding same go to weight rather than admissibility. The defendants are free to address their perceived inadequacies of his alternative designs during cross examination. The defendants arguments concentrated solely upon the alleged unreliability of Mr. Gilberg's alternative designs. Since the court has determined that those arguments go to weight rather than admissibility, it is unnecessary to address any of the other Rule 702, *Daubert,* and *Kumho* factors such as qualifications, rate of error, standards and controls, etc. given that the defendants did not take issue with those factors.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) The defendant's motion *in limine* to exclude the testimony and opinions of the plaintiff's door-latch expert Andrew Gilberg [214] is **GRANTED IN PART AND DENIED IN PART**; specifically,

(2) The motion should be granted regarding the design alternative referenced in the patents as well as the e-latch; whereas,

(3) The motion should be denied regarding the tension cable and auto-locking designs.

**SO ORDERED** this the 8th day of July, A.D., 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE
